**IN THE COURT OF APPEALS OF IOWA**

No. 23-2108
Filed April 10, 2024

**IN THE INTEREST OF J.H.,**
**Minor Child,**

**A.H., Father,**
    Appellant,

**R.H., Mother,**
    Appellant.
_____


Appeal from the Iowa District Court for Wapello County, Richelle Mahaffey,

Judge.


A mother and father separately appeal the termination of their parental

rights to their child. **AFFIRMED ON BOTH APPEALS.**


Jonathan Willier, Centerville, for appellant father.

Patricia J. Lipski, Washington, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

Samuel K. Erhardt, Ottumwa, attorney and guardian ad litem for minor child.

Norman L. Springer Jr., Council Bluffs, attorney for intervenors K.F. and

V.F.


Considered by Bower, C.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

A mother with a long history of involvement with the Iowa Department of Health and Human Services (the department) and a father separately appeal the termination of their respective parental rights to their child, J.H., born in May 2022. The mother challenges the statutory grounds for termination and wraps a request for the application of a permissive exception and six more months of time into a best-interests argument. The father challenges the statutory ground for termination. We affirm on both appeals.

**I. Background Facts and Prior Proceedings.**

The mother has been involved with the department off and on since 2011. In August 2021, her parental rights to an older child were terminated. Another of her children, L.M., was adjudicated in need of assistance (CINA) in the same month; he was previously placed with his father but his father passed away.[1] When J.H. was born, the department was already in monthly contact with the mother due to the CINA proceedings involving L.M. In July 2022, during the monthly visit, the department social work case manager believed that the mother was using methamphetamine and struggling with mental health. The department attempted to perform a child-abuse assessment, but the mother did not respond to phone calls or text messages over three days, and when the maternal grandfather attempted to convince her to cooperate with the department by speaking with her at her home, the mother drove off with J.H. J.H. was removed from the mother's care via ex parte removal order and placed with her maternal grandparents. After

---

[1] L.M. aged out of services through the department in October 2022.

removal, the mother admitted that she had used methamphetamine; she declined any visitation with J.H. for many months. The father participated in paternity testing in September that established that he was J.H.'s biological father. While the mother has a history of methamphetamine use, the father has a history of alcohol and marijuana use and a criminal history of alcohol-related charges.

In September, J.H. was adjudicated CINA pursuant to Iowa Code section 232.96A(3)(b) and (14) (2022). The mother had only one visit with the child since her birth and indicated she would consent to the termination of her parental rights. In October, the father was arrested and held in jail on charges of assault with intent to commit sex abuse, first-degree attempted burglary, third-degree criminal mischief, and going armed with intent; two charges of first-degree harassment were later filed. Following a November review hearing where the mother confirmed she did not want to participate in services or visitations, the juvenile court stated that, "based on the [mother's] request—[the department] need not engage [her] in services or whether she wishes to have interaction/visitation with the child."

The juvenile court held a permanency hearing in January 2023. The State filed a petition to terminate the parents' parental rights the same month. In February, the father pleaded guilty to second-degree attempted burglary, two counts of first-degree harassment, third-degree criminal mischief, and going armed with intent; he was placed on supervised probation. He completed a substance-use evaluation, which recommended continuing care; he met the diagnostic criteria for alcohol abuse. Ultimately, he admitted that he was intoxicated at the time of

the October charges. The mother was also on probation from a previous conviction.

In March, the mother began participating in family treatment court and checked herself into residential treatment for substance use. At this time, the mother asked to resume visitation with J.H. but said to the caseworker: "Can you please make sure you bring the right baby? Because the last time they brought the wrong baby to my visit." This was concerning to the department. But both parents began having in-person visits with J.H., and the court agreed to continue the termination hearing to give the parents time to work toward reunification. Still, the father did not participate in mental-health therapy. To her credit, the mother completed residential treatment, transitioned to extended outpatient treatment, and began seeing a mental-health therapist. The mother moved into the father's home in May, and they began to have visits with J.H. jointly in June; visits eventually progressed to three, six-hour visits and one overnight per week.

In June, the father's probation officer found marijuana in the parents' home. The father was tested, and the results came back negative for any substances. The father reported that the marijuana was the mother's. Yet, he also reported that it was his brother's. Then he changed his story to a carpenter doing work in the home owned the marijuana. The mother was pregnant at the time and, in July, reported that she was feeling depressed and needed to change her medication. The same month, she told the social work case manager that she had used methamphetamine. Visits went back to fully-supervised with no overnight visits. But shortly after, the visits returned to semi-supervised in August with overnights added in September.

The court held a joint termination and permanency hearing in September and October. As of the time of the hearing, J.H. was sixteen months old and had been removed from her parents' custody for fourteen months. At the hearing, the social work case manager testified. She stated that by March 2023, "there was no bond" between the mother and J.H. because the mother "hadn't seen her in eight months almost" before she reengaged with visits that month. She also testified that although the mother and father had made significant progress, especially in the weeks leading up to the hearing, she did not think that the mother was in long-term recovery and therefore was recommending termination. She also felt that the parents "just have more changes they need to make, and they need to be long-lasting changes."

Both the mother and the father also testified. The mother testified that she had "had [her] rights terminated on [her] second boy." And she did not "want to feel that again." At the same time, she admitted to relapsing by again using methamphetamine two months prior to the hearing. She added that marijuana was never her drug of choice; she only struggles with methamphetamine use. The father testified that he has ten other children; yet none of them live with him. He stated that he had not smoked marijuana since he was released from jail: "I don't use it. I don't need it, so it wouldn't be in my home." At the same time, he admitted that he had a barbecue at his home in July, and "one of the guys helping" him put marijuana in a box in his room. "He left it because he was drunk or whatever." He also admitted to at least ten charges for public intoxication in the last ten years and three charges for operating while intoxicated. Even though the department raised concerns about the safety of the child due to the people invited into the home, the

father admitted that he allowed an acquaintance he met while in jail to stop by his home during a visit with J.H. in spite of that person's criminal history. Overall, he insisted that he was relying on his own willpower to remain sober and was fighting to "stay clean and have [his] baby in [his] life." Lastly, the family support worker testified and agreed that both parents have had substance-use and criminal issues for over ten years, but have been making progress for the six months prior to the hearing.

In December, the court terminated the mother's and father's parental rights pursuant to Iowa Code 232.116(1)(h) and the mother's rights under 232.116(1)(g). The father filed his notice of appeal. After the father appealed, the mother filed a motion to reconsider, enlarge, or amend, which the court dismissed, finding that it no longer had jurisdiction. The mother then filed her notice of appeal.

## II. Standard of Review.

We review the termination of parental rights de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). We give careful consideration to the court's factual findings and determinations based on in-person observations, but we are not bound by them. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). "[O]ur fundamental concern" in review of termination proceedings "is the child's best interests." *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

## III. Analysis.

In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We first consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's

rights is in the child's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.* We review only those steps that are actually raised and briefed on appeal by the parent challenging termination. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996). We address the mother's and the father's appeals separately.

**A. Mother's Appeal.**

*1. Statutory Ground for Termination.* First, the mother asserts that the State failed to prove termination under Iowa Code section 232.116(1)(h) by clear and convincing evidence. However, she also stated that she "acknowledges that the grounds for termination of her parental rights under Iowa Code [section] 232.116(1)(g) have each been met by clear and convincing evidence." "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Thus, we summarily affirm termination of the mother's parental rights under paragraph (g). *See P.L.*, 778 N.W.2d at 40.

*2. Best Interests, Permissive Exception, and Six Additional Months.* Next, the mother contends that termination of her parental rights is not in J.H.'s best interests due to the closeness of the mother-daughter bond or because the need for termination would no longer exist after six additional months. In this way, the mother packages an argument for the court to rely on the permissive exception to avoid termination and a request for six additional months into a best-interests argument. But, the best-interests analysis is distinct from both the permissive exception and a request for six additional months. *See In re A.B.*, No. 23-0235,

2023 WL 3335422, at *2 (Iowa Ct. App. May 10, 2023) ("In considering the best interests of the children, we are required to use the best-interests framework set out by our legislature. And that framework does not include the word 'bond.'" (citations omitted)). Put another way, "[c]onsideration of the parent-child bond is not a part of our best-interests analysis." *In re E.S.*, No. 23-0590, 2023 WL 4104126, at *2 (Iowa Ct. App. June 21, 2023). Rather, the consideration of the bond between the family members implicates the permissive exception under section 232.116(3)(c).

So, we first consider the mother's best-interests argument and direct our focus to the primary considerations of the child's safety; the best placement for furthering the long-term nurturing and growth of the child; and the physical, mental, and emotional condition and needs of the child. *See* Iowa Code § 232.116(2); *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Here, the best interests of J.H. require termination of the mother's parental rights. Without looking at the existence of any bond or what the mother's parenting abilities could look like in six months, at the time of the termination trial, the mother had recently used methamphetamine after completing residential substance-use treatment. As noted by the social work case manager, the mother's struggle with her mental health was related to her choice to continue her methamphetamine usage. And in July 2023, when she relapsed, the mother blamed it on feeling sad. Commenting on the July relapse, the social work case manager observed the mother, who was pregnant at the time of the relapse, had not used methamphetamine while pregnant in the past, so this new pattern of use was concerning. The mother's history showed her use of drugs often lead to struggles with processing information and tracking with reality. And

although she had done well in residential drug treatment in early 2023 until her release in May, in each of the other six times she had residential placements she experienced the same pattern of doing well in the facility and relapsing upon release. The social work case manager believed that the mother had not achieved the long-term recovery necessary for J.H.'s safety and physical, mental, and emotional health. Instead, the mother shared a home with the father, where marijuana was also recently located and unclaimed. Although the mother has made significant progress since her first involvement with the department many years ago, we still find that termination is in J.H.'s best interests.

Returning to the permissive exception under section 232.116(3)(c), the legislature allows the court to decline to terminate if it "would be detrimental to the child at the time due to the closeness of the parent-child relationship." A parent resisting termination has the burden to prove this permissive exception by clear and convincing evidence, and our case law recognizes that—without more— neither a parent's love nor the mere existence of a bond is enough to prevent termination. *See In re A.B.*, 956 N.W.2d 162, 169–70 (Iowa 2021). Rather, "our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the mother's] inability to provide for [the child's] developing needs." *D.W.*, 791 N.W.2d at 709. In addition, turning back to the mother's request for six additional months, after the termination trial, the juvenile court may decide to not terminate parental rights if it finds there is clear and convincing evidence that CINA proceedings should continue and enters an order to extend the time for reunification in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). The court may continue the proceedings

for an additional six months if it finds "the need for removal . . . will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b). It is up to the parent to show "the impediments to placing" the child with them "will not exist in six months." *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021).

Here, we decline to apply the permissive exception to avoid termination of the mother's parental rights or to order an additional six months of time to work towards reunification. The mother has not met her burden to prove that the strength of her bond with J.H. overcomes the potential advantage of termination. J.H. was sixteen months old at the time of the termination hearing and had been removed from the mother's care for the fourteen months prior to the hearing; she had only been in the mother's care for the first two months of her life. Initially after her removal, J.H. had one supervised visit with the mother, and the mother did not even recognize J.H. Yet, the connection improved given the mother's renewed interest. Still, regular visitation—including overnight—only began a few months before the termination hearing with a gap of a few weeks after marijuana was found in the home and the level of supervision fluctuated. The mother also recently used methamphetamine—only a few weeks before the termination trial—and had not demonstrated any significant period of sobriety. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (stating the parent "waited too long to respond [to services], and the underlying problems which adversely affected her ability to effectively parent were too serious to be overcome in the short period of time prior to the termination hearing"). This relapse came after extended residential treatment. Thus, the strength of any bond between J.H. and the mother does not outweigh the advantage of termination for J.H., and the mother has failed to demonstrate that

the need for removal due to the mother's methamphetamine use and safety issues in the home would not exist after another extension and six additional months of services.

Along with her other contentions, the mother also argues that the court should have placed custody and care of J.H. with the father. The mother is not allowed to raise arguments on the father's behalf. *See In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005) (holding one parent cannot argue facts or legal positions pertaining to the other parent); *see also In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) (determining a father did not have standing to raise arguments on the mother's behalf in an effort to obtain a reversal of the termination of his parental rights). Finding no reasons to reverse, we affirm the termination of the mother's parental rights.

**B. Father's Appeal.**

*1. Statutory Ground for Termination.* The father contests whether the State proved the statutory ground for termination under Iowa Code section 232.116(1)(h) by clear and convincing evidence. *See* Iowa Code § 232.116(1)(h)(4) ("There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time."); *D.W.*, 791 N.W.2d at 707 (interpreting "at the present time" to mean at the time of the termination hearing.). "When making this decision, we look to the parent['s] past performance because it may indicate the quality of care the parent is capable of providing in the future." *J.E.*, 723 N.W.2d at 798 (citation omitted).

Here, it is a closer question but in the end, we find that there was clear and convincing evidence presented by the State that J.H. could not be returned to the

father's custody at the time of the termination hearing. The father has never cared for the child full-time and he was in jail because of criminal behavior associated with his alcohol use for about four months during the child's removal. Prior to his incarceration in October 2022, the father had contact with the child at one supervised visit and at the August 2022 adjudication hearing. Thus, for the first eight months of the child's life, the father only visited her once. After his release from jail in February 2023, the father became more involved, but he was noted to be consuming alcohol and marijuana despite having faced serious charges because of excessive use of intoxicants.

Throughout the tenure of this case, the department requested that the father engage in services to help with his care of J.H. which he refused, indicating he knew how to be a father. After submitting to mental-health evaluations that recommended therapy as beneficial, the father refused to participate even though there were traumatic events in his past left unresolved. But, the father had completed all court-ordered services before the termination hearing. Although he completed another outpatient treatment course for substance use shortly before the termination hearing, the father did not acknowledge his alcohol abuse problem or have any strategies for maintaining his sobriety other than not going to bars. The father testified he could simply stop drinking, was not an alcoholic, and the criminal charges over the previous ten years involving his alcohol use were just bad decisions. The social case worker testified to concerns over this lack of recognition of a problem and the failure to address long-term recovery strategies as the father told her he was not an alcoholic and should be able to drink because it is legal. The father also admitted having a "drink of alcohol" on two different

occasions following his release from jail, and the "one drink" was half a pint of hard liquor. And impacting his behavior during the months leading up to the termination hearing, the father was monitored by "high risk probation" officers.

But alcohol was not the only substance use issue the father faced. In July, just two months before the termination hearing, the father's probation officer found marijuana in the home. And although the father told the probation officer there was marijuana in the box before it was opened, the father did not admit that the marijuana was his and shifted blame for it being in the home to the mother, his brother, and eventually to the carpenter. Even assuming that the father has been sober since that date, short stints of sobriety are insufficient to establish a child can be safely returned to the parent's custody. *See In re C.M.*, No. 18-0600, 2018 WL 3650355, at *2 (Iowa Ct. App. Aug. 1, 2018) ("The father's failure to attain long-lasting sobriety has a direct, negative impact on his ability to provide for this child's long-term growth and physical, mental, and emotional well-being."). We also note here that the marijuana was found during the time following the continuation of the termination hearing, which was intended to give the father more time to achieve sobriety. Lastly, the father did not accept responsibility for the marijuana being in his home—even if not being his—nor recognize his history of alcohol-related criminal charges and current charges leading to his probation. Thus, we find that the State presented clear and convincing evidence that J.H. could not be returned to the father's custody at the time of the termination hearing.

**IV. Conclusion.**

Because we summarily affirm on the statutory ground not challenged by the mother and decline to rely on the permissive exception to avoid termination or to

order an additional six months of time, we affirm the termination of the mother's parental rights. Because we find that the State proved that J.H. could not be safely returned to the father's custody at the time of the termination hearing, we also affirm the termination of the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**